# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| MARUBENI-ITOCHU STEEL AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA; U.S. CUSTOMS & BORDER PROTECTION; and ACTING COMMISSIONER OF U.S. CUSTOMS & BORDER PROTECTION,<br><br>Defendants. | **Court No. 23-00004** |

## COMPLAINT

Plaintiff Marubeni-Itochu Steel America ("MISA"), by and through its attorneys, alleges and states as follows:

## INTRODUCTION

1. In 2017, MISA discovered that it inadvertently failed to deposit antidumping duty ("AD") cash deposits in conjunction with four (4) entries of steel sheet from Japan that were imported into the United States during the period of March 24, 2016 to July 6, 2016.

2. AD cash deposits were required for these entries under two AD Orders covering *Certain Cold-Rolled Steel Flat Products From Japan*, Case No. A-588-873, and *Certain Hot-Rolled Steel Flat Products From Japan*, Case No. A-588-874.

3. By letters dated July 17, 2017 and August 10, 2017, MISA disclosed the inadvertent failure to deposit the required AD cash deposits for the four entries of steel sheet, asked U.S. Customs and Border Protection ("CBP") to change the entry type for these entries from Type 01 (Consumption) to Type 03 (Consumption - Antidumping/Countervailing Duty), and tendered AD cash deposits totaling $571,297.96 to CBP.

4. At the time of MISA's payment of the AD cash deposits, the U.S. Department of

Commerce ("Commerce") had not yet issued liquidation instructions for entries subject to Case Nos. A-588-873 and A-588-874 and imported during the period of March 24, 2016 to July 6, 2016.

5. The final AD rate for Case No. A-588-873 was the same as the cash deposit rate applied by MISA. However, the final AD rate for Case No. A-588-874 was less than the cash deposit rate and should have resulted in a refund of the excess cash deposits for the three entries subject to that AD Order.

6. CBP has not refunded the excess AD cash deposits collected from MISA and claims that it lacks statutory authority to do so.

7. For all the reasons that follow, this Court should declare that Defendants' failure to accurately and timely assess AD duties—and, in turn, issue MISA accurate and timely refunds of the $494,902.80 in overpaid AD cash deposits—is unlawful and subject to prompt correction.

## JURISDICTION

8. The Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1581(i)(1)(B), which confers "exclusive jurisdiction" to the Court over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue." 28 U.S.C. § 1581(i)(1)(B).

## PARTIES

9. Plaintiff MISA, established in 2001 and headquartered in New York, provides value-added steel and aluminum solutions to customers in the automotive, construction, appliance, food, medical, and aerospace industries, among others.

10. Defendant United States of America received the disputed duties and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B) and (D).

11. Defendant CBP is the agency responsible for collecting duties on imports,

2

including AD duties. CBP collected payments made by Plaintiff for AD cash deposits pursuant to the AD Orders covering *Certain Cold-Rolled Steel Flat Products From Japan*, Case No. A-588-873, and *Certain Hot-Rolled Steel Flat Products From Japan*, Case No. A-588-874.

## STANDING

12. Plaintiff has standing to sue because it is "adversely affected or aggrieved by agency action within the meaning of" the *Administrative Procedure Act* ("APA")—namely, Defendants' failure to refund certain AD cash deposits that exceeded what Plaintiff lawfully owed. 5 U.S.C. §§ 551(13) and 702; *see* 28 U.S.C. § 2631(i) ("Any civil action of which the Court of International Trade has jurisdiction . . . may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of Section 702 of title 5.").

## TIMELINESS OF THE ACTION

13. A plaintiff must commence an action under 28 U.S.C. § 1581(i)(1)(B) "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i).

## BACKGROUND

### A. System for Assessing AD Duties

14. The United States has a retrospective system of assessing AD duties. Specifically, when merchandise subject to an AD order is entered into the United States, CBP is required to suspend liquidation of entries of the merchandise subject to the AD order, and the importer of record posts a cash deposit as security against potential final AD duties. 19 U.S.C. § 1673b(d)(1)(B); 19 C.F.R. § 351.205(d). The cash deposit represents only an *estimate* of the potential duties that may be owed on each entry, given that the amount of *actual* duties owed on each entry is unknown at the time of the cash deposit.

15. At the time of tender, CBP is required to place the cash deposits into a "Clearing Account" pending the completion of an administrative review of entries made during the previous

12-month period. *See* 19 C.F.R. § 159.64(a)(2) (explaining that the Clearing Account is designed to hold "all estimated antidumping and countervailing duties received pursuant to an antidumping or countervailing duty order or finding in effect on January 1, 1999, or thereafter.").

16. Once per year, Commerce offers parties the opportunity to request an administrative review of entries made during the previous 12-month period. 19 C.F.R. § 351.213. If no party requests an administrative review, Commerce instructs CBP to liquidate entries from the period of review and assess final AD duties at the cash deposit rate that prevailed at the time of entry. 19 C.F.R. § 351.212(a). However, if a party requests an administrative review, Commerce conducts a review proceeding to calculate final AD duties on entries from the period of review. 19 C.F.R. § 351.221.

17. At the conclusion of the administrative review, Commerce calculates a final weighted-average dumping margin.[1] *Id.* If Commerce has the necessary information available, it calculates an importer-specific assessment rate and instructs CBP to liquidate entries from the period of review and assess final AD duties at the applicable importer-specific assessment rate. 19 C.F.R. §§ 351.211(b) and 351.212(b)(1).

18. If the importer-specific assessment rate results in AD duties higher than the cash deposit held on the entries in question, CBP is required to calculate the difference between the assessment rate and the cash deposit rate, and then require the importer of record to pay the difference, plus interest. 19 U.S.C. § 1673f(b)(1); 19 C.F.R. § 351.212(e). However, if the importer-specific assessment rate results in AD duties lower than the cash deposit held on the entries in question, CBP is required to calculate the difference and issue a refund to the importer

---

[1] For entries entered on or after Commerce publishes the final results of the administrative review in the *Federal Register*, CBP will require a cash deposit equal to the newly-calculated weighted-average dumping margin. 19 U.S.C. § 1673d(c). That cash deposit rate will continue until Commerce completes the next administrative review. *Id.*

of record, plus interest. 19 U.S.C. § 1673f(b)(2); 19 CFR § 351.212(e).

19. CBP has no authority to retain estimated AD duties beyond the final assessment rate, as its role in liquidating AD duties is "merely ministerial." *See Mitsubishi Elecs. Am. Inc. v. United States*, 44 F.3d 973, 977 (Fed. Cir. 1994) ("Customs has a merely ministerial role in liquidating antidumping duties under 19 U.S.C. § 1514(a)(5)."). Otherwise stated, CBP's role is to follow Commerce's instructions and "to liquidate final duties timely and accurately[.]" U.S. Customs and Border Protection (https://www.cbp.gov/trade/priority-issues/adcvd) (last visited Jan. 4, 2023).

### B. Antidumping Duty Cases on Cold-Rolled and Hot-Rolled Steel Sheet from Japan

20. Cold-rolled steel sheet from Japan is subject to AD duties under Case No. A-588-873. The first period of review—which covers one (1) of the four (4) entries at issue—was March 7, 2016 through June 30, 2017. The cash deposit rate for this period of review was 71.35%.

21. Hot-rolled steel sheet from Japan is subject to AD duties under Case No. A-588-874. The first period of review—which covers three (3) of the four (4) entries at issue—was March 22, 2016 through September 30, 2017. The cash deposit rate for this period of review was 11.29%.

### C. Payment of AD Cash Deposits on MISA's Entries

22. Between March 24, 2016 and July 6, 2016, MISA imported into the United States certain hot-rolled and cold-rolled steel sheet (in coil form) produced by Nippon Steel & Sumitono Metal Corporation ("NSSMC") in Japan. However, at the time of entry of this merchandise, MISA, via its broker, Livingston International ("Livingston"), inadvertently failed to deposit AD cash deposits, as required by Case Nos. A-588-873 and A-588-874.

23. On July 27, 2017, Livingston sent a letter to CBP identifying a July 6, 2016 entry

of hot-rolled steel sheet from Japan for which the Company had inadvertently failed to deposit the required AD cash deposit. This letter provided: (a) an amended entry summary noting a change in entry type from Type 01 (Consumption) to Type 03 (Consumption - Antidumping/Countervailing Duty); (b) a Non-Reimbursement Statement for the identified AD case covering the period of import; and (c) a check for the required AD cash deposit amount. The entry details and AD cash deposit amount for the relevant entry is summarized in the table below:

| Entry Date | Entry | AD Case | Amount |
| --- | --- | --- | --- |
| July 6, 2016 | 300-8403739-8 | A-588-874-001 | $196,763.92 |

24. On August 10, 2017, Livingston sent a second letter to CBP identifying additional entries of hot-rolled and cold-rolled steel sheet from Japan for which the Company had inadvertently failed to deposit the requisite AD duty cash deposit. This letter provided: (a) amended entry summaries noting a change in entry type from Type 01 (Consumption) to Type 03 (Consumption - Antidumping/Countervailing Duty); (b) Non-Reimbursement Statements for the identified AD cases covering the period of import; and (c) a check for the required AD cash deposit amounts. The entry details and AD cash deposit amounts are summarized in the table below:

| Entry Date | Entry | AD Case | Amount |
| --- | --- | --- | --- |
| March 24, 2016 | 300-8136943-0 | A-588-873-002 | $76,395.16 |
| April 13, 2016 | 300-8139942-2 | A-588-874-001 | $147,928.81 |
| May 4, 2016 | 300-8401223-5 | A-588-874-001 | $150,210.07 |

25. Collectively, the July 27, 2017 and August 10, 2017 letters disclosed the circumstances of MISA's inadvertent failure to deposit AD cash deposits. In accordance with the requirements of 19 U.S.C. § 1592(c)(4) and 19 C.F.R. § 162.74(b), these letters provided statements to CBP that identified: (a) the merchandise involved in the violations; (b) the

importations included in the disclosure by entry number; (c) the inadvertent material false statements and an explanation as to how and when they occurred; and (d) the true and accurate information or data that should have been provided for the specific entries identified.

26. Upon receipt of MISA's AD cash deposit payments, CBP issued collection receipts, wherein it recorded the payments as "Antidumping Duties."

### D. Administrative Review and Final Rates For Case Nos. A-588-873 and A-588-874

27. For Case No. A-588-873, no party requested an administrative review for the first period of review (March 7, 2016 through June 30, 2017) and Commerce did not conduct an administrative review. As a result, all entries suspended under Case No. A-588-873 for this period were liquidated at the cash deposit rate based on automatic liquidation instructions memorialized in Message No. 7272321 (dated September 29, 2017). For Case No. A-588-873-002, both the cash deposit rate and the final liquidation rate was 71.35%.

28. Commerce conducted an administrative review of Case No. A-588-874 for the first review period (March 22, 2016 through September 30, 2017) and published its final results in the *Federal Register* on June 28, 2019. *See Certain Hot-Rolled Steel Flat Products From Japan: Final Results of Antidumping Duty Administrative Review and Final Determination of No. Shipments; 2016-2017*, 84 Fed. Reg. 31025 (June 28, 2019). Based on this administrative review, Commerce calculated a weighted-average dumping margin of 7.64% for subject merchandise produced/exported by NSSMC (Case No. A-588-874-001). *Id.* at 31027.

29. Commerce also calculated importer-specific assessment rates for NSSMC, including an assessment rate for subject merchandise imported by MISA. Although the importer-specific assessment rates involved NSSMC's confidential information (thus resulting in Commerce's redaction of all of the details in its liquidation instructions to CBP), MISA learned

from NSSMC that the importer-specific assessment rate for MISA's imports from NSSMC was 0.00%. *See* Message No. 9200304 (dated July 19, 2019).

30. On August 8, 2019, NSSMC filed a Complaint in the Court of International Trade ("CIT") challenging the final results of Commerce's first administrative review of Case No. A-588-874 (*Nippon Steel & Sumitomo Metal Corp. v. United States*, Ct. No. 19-00131, ECF No. 9). The CIT issued a statutory injunction on August 8, 2019, covering subject merchandise produced and/or exported by NSSMC that were entered during the first administrative review period. *Id.* at ECF No. 11. Commerce transmitted instructions implementing the statutory injunction in Message No. 0013402.

31. On November 10, 2020, the CIT affirmed Commerce's final results. *Id.* at ECF No. 53. NSSMC did not appeal the CIT's final judgment. *Id.* at ECF No. 54.

32. For Case No. A-588-874, the final importer-specific assessment rate for subject merchandise produced and exported by NSSMC and imported by MISA was 0.00%.

**E. MISA's Overpayment of AD Duties**

33. At the time MISA submitted the July 27, 2017 and August 10, 2017 letters and paid the AD cash deposits for the subject entries, the administrative review for AD Case Nos. A-588-873 and A-588-874 covering time period within which these entries were made had not been completed and Commerce had yet to issue liquidation instructions for entries subject to these cases.

34. The first period of review for Case No. A-588-873 includes the import date of Entry No. 300-8136943-0 addressed in the August 10, 2017 letter and, at that time, entries of cold-rolled steel from Japan subject to Case No. A-588-873 were still subject to suspension of liquidation.

35. The first period of review for Case No. A-588-874 includes the import dates for

8

Entry Nos. 300-8403739-8, 300-8139942-2, and 300-8401223-5 addressed in the July 27, 2017, and August 10, 2017 letters; and, at that time, entries of hot-rolled steel from Japan subject to Case No. A-588-874 were still subject to suspension of liquidation.

36. Based on the status of the relevant AD cases at the time of the initial disclosure filings—or, more specifically, because the final AD rates for these imported goods had not yet been established and CBP had not received liquidation instructions from Commerce that would have allowed CBP to liquidate (or reliquidate) the subject entries with final AD duties assessed—CBP was statutorily required to treat the payments from MISA as cash deposits. 19 U.S.C. § 1673b(d)(1)(B); 19 C.F.R. § 351.205(d).

37. Accordingly, upon receipt of MISA's tender of estimated AD duty cash deposits, CBP recorded the payments under Account Class Code "012" ("Antidumping Duties").

38. Moreover, consistent with its statutory obligations, CBP, during the relevant time period, also maintained internal policies governing the processing of prior disclosure submissions, wherein CBP personnel was required to deposit the AD duty cash deposits into a "suspense" account. This policy—which was formalized in CBP Directive 5350-020A (Nov. 17, 2021)—required CBP personnel to utilize a suspense account so that any overpayments, due to a reduction in the actual loss of duties or fees, will be automatically refunded to the disclosing party.

39. Because the final AD liquidation rate applicable to entries of cold-rolled steel from Japan under Case No. A-588-873 was the same as the cash deposit rate, MISA tendered the correct amount of AD duties for Entry No. 300-8136943-0.

40. But, because the final AD liquidation rate applicable to entries of hot-rolled steel from Japan under Case No. A-588-874 was less than the cash deposit rate, MISA submitted an overpayment of AD cash deposits in the amount of $494,902.80, as summarized in the chart below.

| Entry Date | Entry | AD Case | Cash Deposit AD Rate | Final Liquidation AD Rate | Final AD Amount | Amount of Overpayment |
|---|---|---|---|---|---|---|
| April 13, 2016 | 300-8139942-2 | A-588-874-001 | 11.29% | 0.00% | $0 | $147,928.81 |
| May 4, 2016 | 300-8401223-5 | A-588-874-001 | 11.29% | 0.00% | $0 | $150,210.07 |
| July 6, 2016 | 300-8403739-8 | A-588-874-001 | 11.29% | 0.00% | $0 | $196,763.92 |
| Total: | | | | | | $494,902.80 |

41. Accordingly, MISA is entitled to a refund of the overpayment for these three entries, plus interest. 19 U.S.C. §§ 1673f(b)(2) and 1677g; 19 C.F.R. § 351.212(e).

F. **MISA's Request for Refund of Excess AD Duty Cash Deposits**

42. On April 4, 2022, MISA sent a letter to CBP for the purpose of completing its prior disclosure commenced by the July 27, 2017 and August 10, 2017 letters. Pursuant to 19 U.S.C. § 1592(c)(4) and 19 C.F.R. § 162.74, MISA provided all of the information necessary for CBP to complete its review of the disclosed violations and requested that CBP issue a refund to MISA in the amount of $494,902.80, representing the amount of AD cash deposits that MISA overpaid in relation to three (3) of the four (4) entries at issue in the prior disclosure.

43. On April 20, 2022, CBP issued a letter to MISA accepting the Company's claim of prior disclosure treatment for the July 27, 2017 and August 10, 2017 letters and assessing a penalty of $8,619.39, which is equal to the interest due on the AD cash deposits from the date of liquidation to the date the duties were deposited with CBP.

44. Moreover, within the letter, CBP states that "The Center for Excellence and Expertise has been provided with a copy of your prior disclosure and will handle the request for a refund of antidumping duties."

45. On May 4, 2022, MISA tendered a payment of $8,619.39 in satisfaction of the

assessed penalty.

46. On May 25, 2022, CBP sent MISA a letter ("Closeout Letter") confirming the agency's receipt of MISA's penalty payment and officially closing the case.

47. Through subsequent communications with the Base Metals Center for Excellence and Expertise ("CEE"), counsel for MISA was informed that the CEE does not have authority to refund the excess AD cash deposits paid by MISA because these duties were not deposited into a suspense account at the time of receipt.

## COUNT I

### (VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT BY FAILING TO REFUND EXCESS AD CASH DEPOSITS)

48. Paragraphs 1 through 47 are incorporated by reference.

49. The APA authorizes the Court to hold unlawful and set aside agency action that is: "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence." 5 U.S.C. § 706(2).

50. Moreover, "[i]t has long been established that government officials must follow their own regulations, even if they were not compelled to have them at all." *Voge v. United States*, 844 F.2d 776, 779 (Fed. Cir. 1988); *see also Hernandez v. Dept. of Air Force*, 498 F.3d 1328, 1332 (Fed. Cir. 2007) (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267-68 (1954)) (finding that agencies are bound to follow their own rules, even self-imposed procedural rules that limit otherwise discretionary decisions)).

51. Commerce maintains exclusive authority to issue AD orders establishing final AD liquidation rates. 19 C.F.R. §§ 351.210-212. As a result, it is Commerce that directs CBP to (1)

11

suspend liquidation of entries of merchandise subject to the AD order and collect cash deposits at a defined cash deposit rate as security against potential final AD duties; and (2) to liquidate all shipments entered during a period of review and make the final duty assessment based on the final AD liquidation rates. 19 U.S.C. § 1673b(d)(1)(B); 19 C.F.R. § 351.205(d).

52. In turn, CBP does not have the authority to collect AD cash deposits in excess of the cash deposit rate(s) established by Commerce. 19 C.F.R. § 351.210(d) (providing that Commerce will "instruct the Customs Service to require a cash deposit ... for each entry of the subject merchandise entered, or withdrawn from warehouse, for consumption on or after the date of publication of the [final determination] order.").

53. Nor does CBP have the authority to retain estimated AD duties in excess of the final AD liquidation rate(s) established by Commerce. *See* 19 U.S.C. § 1673f (providing that, to the extent the deposit of estimated AD duties pending liquidation of entries is higher than the duty owed under the final AD liquidation rate, the overpayment "*shall*" be refunded with interest) (emphasis added) (citing 19 U.S.C. 1677g); 19 CFR § 351.212(e) ("Under section 778 of the Act, the Secretary will instruct the Customs Service to calculate interest for each entry on or after the publication of the order from the date that a cash deposit is required to be deposited for the entry through the date of liquidation of the entry.").

54. Indeed, CBP's role in liquidating AD duties is "merely ministerial." *See Mitsubishi*, 44 F.3d at 977 ("Customs has a merely ministerial role in liquidating antidumping duties under 19 U.S.C. § 1514(a)(5).").

55. Accordingly, Defendants engaged in actions properly deemed to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" when they:

a. failed to suspend or unset liquidation for the entries at issue;

b. failed to hold MISA's AD cash deposits in a suspense account or clearing account; and

c. failed to issue MISA a prompt and accurate refund (with interest) of the $494,902.80 in excess AD cash deposits that MISA overpaid as a result of the difference between the estimated AD duties deposited and the final AD duties owed.

19 U.S.C. § 1673f(b)(2); 19 C.F.R. §§ 159.64(a)(2) and 351.212(e).

56. Further, by failing to deposit MISA's AD cash deposits—$571,297.96—into a suspense account or clearing account, Defendants failed to comply with CBP's own internal directives, thus resulting in the present circumstances, whereby CBP is allegedly lacking in statutory authority to issue MISA the refund of overpaid AD duty cash deposits it is entitled to.

57. CBP's failure to follow its own rules and regulations is not only violative of the law, it is also deeply inequitable, given that MISA tendered the AD cash deposits in good faith, with the belief that CBP would—in accordance with its express policies, and the applicable statutes and regulations—hold such deposits in a suspense account or clearing account, "liquidate final duties timely and accurately", and refund any overpaid AD duty cash deposits. *See* U.S. Customs and Border Protection Website (https://www.cbp.gov/trade/priority-issues/adcvd) (last visited Jan. 4, 2023).

**COUNT II**

**(VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT BY IMPROPERLY CALCULATING THE LOSS OF REVENUE IN MISA'S PRIOR DISCLOSURE)**

58. Paragraphs 1 through 57 are incorporated by reference.

59. Alternatively, if CBP is taking the position that MISA's total AD cash deposits

13

tendered in conjunction with its prior disclosure represented the "actual (and total) loss of revenue" resulting from the actions described in MISA's prior disclosure, Defendants have also engaged in actions that are "not in accordance with law."

60. By statute and Commerce's instructions, CBP was required to suspend or unset liquidation of the entries at issue, and treat MISA's tender of AD cash deposits as *estimated* AD duties to be held in a suspense or clearing account pending the issuance of a final AD assessment rate applicable to the subject entries, given that the "actual loss of duties" was unknown at the time MISA tendered its AD cash deposits. *See* 19 C.F.R. § 162.74(c).

61. Moreover, at the time Commerce issued its liquidation instructions for the entries at issue, CBP was required to assess final AD duties both timely and accurately. Thus, by failing to meet its statutory obligations described above and, ultimately, to accurately calculate the AD duties owed by MISA in relation to Entry Nos. 300-8139942-2, 300-8401223-5, and 300-8403739-8, Defendants acted "in excess of statutory authority." *See* 19 U.S.C. § 1673f(b)(2) and 19 C.F.R. § 351.212(e).

62. Notwithstanding, even if CBP's treatment of MISA's AD cash deposits as the "actual loss of duties" were to be accepted, it is plain that the calculated actual loss of duties was incorrect, and required correction. *See* 19 C.F.R. § 162.74(c) (stating that "[a]ny reductions of the CBP calculated actual loss of duties, or and fees *shall* be refunded to the disclosing party.") (emphasis added).

63. Accordingly, Defendants engaged in actions properly deemed to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" when it:

    a. failed to hold MISA's AD cash deposits tendered with its initial prior disclosure letters in a suspense account or clearing account;

  b. failed to properly calculate the actual loss of duties for MISA's prior disclosure based on the final AD rates for the subject entries; and

  c. failed to issue MISA a prompt and accurate refund (with interest) of the $494,902.80 in excess AD cash deposits that MISA overpaid as a result of the difference between the estimated AD duties deposited and the final AD duties owed.

19 U.S.C. §§ 1592 and 1673f(b)(2); 19 C.F.R. §§ 159.64(a)(2), 162.74; and 351.212(e).

64. CBP must not be allowed to benefit from its own failure to properly handle MISA's AD duty cash deposits in this matter.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully requests that this Court:

(1) declare that Defendants acted unlawfully;

(2) order that Defendants issue a refund to Plaintiff in the amount of $494,902.80, plus interest;

(3) award Plaintiff its costs and reasonable attorney fees; and

(4) grant such other and further relief as may be just and proper.

Respectfully submitted,

/s/ Wm. Randolph Rucker
Wm. Randolph Rucker
FAEGRE DRINKER BIDDLE & REATH LLP
320 S. Canal Street, Suite 3300
Chicago, IL 60606
Telephone: (312) 569-1000

January 5, 2023        *Counsel to Plaintiff*